Alan J. Leiman (OSB No. 98074)
alan@leimanlaw.com
Drew G. Johnson (OSB No. 114289)
drew@leimanlaw.com
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **RICARDO CARDENAS MANSILLA,** and **GABRIEL CARDENAS-RIUMALLO,** | **CASE NO.:** 6:17-cv-00235 |
| Plaintiffs, | **FLSA MINIMUM WAGE AND OVERTIME COMPLAINT; FLSA RETALIATION; OREGON WAGE AND HOUR LAWS; OREGON EMPLOYMENT DISCRIMINATION** |
| v. | |
| **EXPRESS MESSENGER SYSTEMS, INC.,** An Arizona corporation, **DOREL SINGEORZAN,** and **DANIEL SINGEORZAN,** | Fair Labor Standards Act 29 U.S.C. § 201 *et. seq.*; Oregon Wage and Hour Laws (ORS 652, 659A) |
| Defendants. | |

### DEMAND FOR JURY TRIAL

Plaintiffs, RICARDO CARDENAS MANSILLA ("Cardenas Mansilla"), and GABRIEL CARDENAS-RIUMALLO ("Cardenas-Riumallo"), bring this Fair Labor Standards Act ("FLSA") action for violations of the FLSA and Oregon's Wage and Hour laws against Defendants, EXPRESS MESSENGER SYSTEMS, INC., doing business as "Ontrac", an enterprise engaged in commerce or the production or goods for commerce (hereinafter, "Ontrac"), and DOREL SINGEORZAN, and DANIEL SINGEORZAN, individuals who

1 – Complaint

individually and collectively are engaged in commerce. Plaintiffs make their allegations based upon personal knowledge, information, and belief.

## INTRODUCTION

1. Plaintiff Cardenas Mansilla and Plaintiff Cardenas-Riumallo (father and son) both routinely worked over 40 hours per week as local delivery drivers delivering packages in Lane County, Oregon for Defendants Ontrac, and Defendants Dorel and Daniel Singeorzan.

2. Plaintiffs Cardenas Mansilla and Cardenas-Riumallo were each wrongfully classified and treated as independent contractors by the Defendants when in fact, under the FLSA and Oregon Wage and Hour Laws (ORS Chapter 652), they should have been classified and treated as employees.

3. Plaintiffs Cardenas Mansilla and Cardenas-Riumallo each performed work as employees for all three Defendants who were the "joint employers" of both Plaintiffs as that term is defined in 29 C.F.R §791.2.

4. Plaintiffs bring this action against Defendants jointly and severally to recover their individual unpaid minimum wage and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon Wage and Hour Laws, ORS Chapter 652 ("Oregon Wage and Hour Laws").

5. Plaintiffs also bring this action under 29 U.S.C. § 215(a)(3) of the FLSA to recover their individual damages arising out of Defendants' prohibited retaliation that occurred when Defendants fired Plaintiffs immediately after Plaintiffs complained to Defendant Daniel Singeorzan about their rate of pay, whether they were being paid correctly, and whether they had been paid all wages earned.

6.      Plaintiffs also bring this action to recover wages and penalties for violation of Oregon Wage and Hour Laws (ORS Chapter 652).

7.      This action seeks equitable relief, compensatory and liquidated damages, attorney's fees, taxable costs of court, pre- and post-judgment interest and penalty wages for Defendants' willful failure to pay wages, including minimum wages and overtime wages, and other relief, pursuant to 29 U.S.C. § 216(b) and Oregon Wage and Hour Laws for each Plaintiff individually.

8.      Plaintiffs demand a jury trial on all issues that may be tried to a jury.

9.      This action is authorized and instituted pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

## JURISDICTION AND VENUE

10.      Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), as this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; 28 U.S.C. § 1331; and 28 U.S.C. §1337, as it arises under acts of Congress regulating commerce.   Jurisdiction of the state law claims is conferred on this Court by 28 U.S.C. § 1367 because the state law claims form a part of the same case or controversy as the federal claims under Article III of the United States Constitution.

11.      Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this complaint occurred in the District of Oregon.


## PARTIES

12.      Defendant Express Messenger Systems, Inc., doing business in Oregon as "Ontrac", is an Arizona corporation whose website states that it is a leader in regional overnight package delivery service within an eight-state region that includes Oregon.

13.      Defendant Ontrac is subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon Wage and Hour Laws, ORS Chapters 652 and 653.

14. At all material times, Ontrac has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) because it had employees engaged in commerce. Based upon information and belief, the annual gross sales volume of Ontrac was in excess of $500,000.00 per annum at all times material hereto. Alternatively, the Plaintiffs worked in interstate commerce so as to fall within the protections of the FLSA.

15. At all material times, Defendant Ontrac has been an employer within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d). Ontrac directly or indirectly acted in the interest of an employer toward the Plaintiffs at all material times, including, without limitation, directly or indirectly controlling the employment terms and conditions of both Plaintiffs.

16. Defendant Dorel Singeorzan is a resident of Lane County Oregon. At all times material to this Complaint, Dorel Singeorzan operated a package delivery business individually and jointly with Defendant Daniel Singeorzan, and Defendant Ontrac, delivering packages exclusively for Ontrac in Lane County, Oregon out of a warehouse facility located in Springfield, Oregon.

17. Defendant Daniel Singeorzan is a resident of Lane County Oregon. At all times material to this Complaint, Daniel Singeorzan operated a package delivery business individually and jointly with Defendant Dorel Singeorzan, and Defendant Ontrac, delivering packages exclusively for Ontrac in Lane County, Oregon out of a warehouse facility located in Springfield, Oregon.

18. Defendants Dorel and Daniel Singeorzan are subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon Wage and Hour Laws, ORS Chapters 652 and 653.

19. At all material times, Defendants Dorel and Daniel Singeorzan have been individually and jointly engaged in an enterprise in commerce or in the production of goods for commerce

within the meaning of 29 U.S.C. § 203(s)(1) because they had employees engaged in commerce. Plaintiffs worked in interstate commerce so as to fall within the individual coverage protections of the FLSA.

20. At all material times, Defendants Dorel and Daniel Singeorzan, jointly and severally, have been employers within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d). Defendants directly or indirectly acted in the interest of an employer toward the Plaintiffs at all material times, including, without limitation, directly or indirectly controlling the employment terms and conditions of both Plaintiffs.

21. Defendants Ontrac, Dorel Singeorzan, and Daniel Singeorzan each acted as joint employers of both Plaintiffs because all three Defendants jointly directly or indirectly controlled the employment terms and daily work of both Plaintiffs.

22. Plaintiff Ricardo Cardenas Mansilla is a resident of Lane County, Oregon who delivered packages for Defendants Ontrac, and Dorel and Daniel Singeorzan, from on or around November 30, 2015 until his termination on July 27, 2016.

23. At all times while working for Defendants, Plaintiff Cardenas Mansilla drove his personal vehicle, which weighed less than 10,001 pounds, GVWR, to deliver packages for Defendants.

24. Plaintiff Gabriel Cardenas-Riumallo is a resident of Lane County, Oregon who delivered packages for Defendants Ontrac, and Dorel and Daniel Singeorzan from approximately May 2016 until his termination on July 27, 2016.

25. At all times while working for Defendants, Plaintiff Cardenas-Riumallo drove his personal vehicle, which weighed less than 10,001 pounds, GVWR, to deliver packages for Defendants.

## FACTS

26.     Plaintiff Cardenas Mansilla is a native Spanish speaker, who speaks limited English. In late November 2015, an individual named Christian Soto ("Soto") asked Plaintiff Cardenas Mansilla if he wanted work delivering packages for Defendants.  Soto arranged for Plaintiff Cardenas Mansilla to meet Defendant Dorel Singeorzan at the Springfield, Oregon warehouse facility.

27.     On November 30, 2015, Plaintiff Cardenas Mansilla met with Defendant Dorel Singeorzan and was offered and accepted work delivering Ontrac packages for Defendants in south Lane County for a promised piece rate of $5 per delivery stop.

28.     When Defendant Dorel Singeorzan offered Plaintiff Cardenas Mansilla the job delivering packages, he told Plaintiff that he would be considered an independent contractor, but he did not offer Plaintiff any explanation of the difference between an employee and an independent contractor.

29.     On or around November 30, 2015 Defendant Dorel Singeorzan completed and submitted all of the necessary "Independent Contractor" paperwork relating to Plaintiff Cardenas Mansilla's employment as a package delivery driver for Defendants.  Defendant Dorel Singeorzan completed and electronically signed all of the documents for Plaintiff Cardenas-Mansilla without providing Plaintiff the opportunity to review the submissions, and without explanation as to their content, and purported legal significance to Plaintiff.

30.     Plaintiff Cardenas Mansilla began working delivering packages for Defendants on the very same day he went to speak to Defendant Daniel Singeorzan about the job and before any independent contractor agreement had been completed and submitted by Defendant Dorel Singeorzan purportedly on Plaintiff Cardenas Mansilla's behalf.

6 – Complaint

31.    Plaintiff Cardenas Mansilla was not engaged in the package delivery business prior to going to work for Defendants, and any and all agreements he purportedly made, and any actions he may have taken relating to establishing himself as an independent contractor engaged in the package delivery business were taken at the behest and direction of all three Defendants, as required conditions of employment delivering packages for Defendants.

32.    Plaintiff Cardenas Mansilla alleges that Defendant Dorel Singeorzan completed and submitted an "Owner/Operator Agreement" for Plaintiff Cardenas Mansilla, signing him up as an independent contractor with a company called Subcontracting Concepts CT LLC, a Delaware limited liability company with a principal place of business in the state of New York ("SCI").

33.    SCI calls itself a logistics broker and purportedly contracts with independent contractor owner/operator delivery drivers to provide contract delivery services for companies that want to use independent contractors to deliver their packages.

34.    Plaintiff Cardenas Mansilla alleges that Defendants Daniel and Dorel Singeorzan knew that Plaintiff was not an independent contractor engaged in the package delivery business when Plaintiff was hired, that he was not registered as such a business with the state of Oregon, and that he did not qualify as an independent contractor under the terms of the SCI Owner/Operator Agreement that Defendant Dorel Singeorzan filled-out and submitted for Plaintiff Cardenas Mansilla.

35.    Plaintiffs allege that in their individual cases, Defendants' required use of SCI by Plaintiffs was a sham, designed to evade federal and state employment laws, including the FLSA and the Oregon Wage and Hour Laws.

36.    In this case, SCI acted as a human resource and payroll service for Defendants, who were acting as Plaintiffs' joint employers.

37.     SCI did not employ Plaintiffs because it did not suffer or permit them to work. Furthermore, SCI expressly disavows the existence of any employer-employee relationship between Plaintiffs and SCI.

38.     The volume of packages and the amount of time Plaintiff Cardenas Mansilla needed to deliver them increased significantly after Ontrac began delivering packages for Amazon in Lane County sometime in early 2016. Around the same time, Defendants told Plaintiff Cardenas Mansilla that he was "responsible" for the Cottage Grove and Creswell delivery area and the increasing volume of packages needing to be delivered.

39.     With the increased package volume from Amazon, Plaintiff Cardenas Mansilla's workweek went from approximately 25-30 hours per week to upwards of 50-60 hours per week and sometimes more.

40.     In on or around sometime in May 2016, Defendants Dorel and Daniel Singeorzan threatened Plaintiff Cardenas Mansilla that there would be consequences if he could not keep up with the package volume. Because Plaintiff Cardenas Mansilla knew that Defendants Dorel and Daniel Singeorzan had threatened to withhold pay from another driver and make that driver pay for the cost of delivering the excess packages under similar circumstances, Plaintiff Cardenas Mansilla understood Defendants' talk of consequences to mean that he would not be paid for work that he had done, and that Defendants were threatening to charge Plaintiff for the cost of delivering the packages that he was unable to deliver.

41.     Plaintiff Cardenas Mansilla turned to his son, Plaintiff Cardenas-Riumallo for help, and asked him if he would work delivering packages for the Defendants, and Plaintiff Cardenas-Riumallo agreed. That is the only involvement that Plaintiff Cardenas Mansilla had in the hiring of his son by Defendants.

8 – Complaint

42. In early May 2017 Plaintiff Cardenas-Riumallo went to the Springfield warehouse and met with Defendant Dorel Singeorzan. Defendant told Plaintiff Cardenas-Riumallo that he could start working right away, and provided Cardenas-Riumallo with a link to the SCI website, and told Plaintiff Cardenas-Riumallo that he could fill out and submit the SCI Owner/Operator Agreement on his own.

43. Plaintiff Cardenas-Riumallo began delivering packages for Defendants on the same day Plaintiff Cardenas-Riumallo first met with Defendant Dorel Singeorzan, and before any independent contractor agreement had been submitted to SCI.

44. At the time Cardenas-Riumallo agreed to work for Defendants, he believed that if his father, who was routinely working 50-60 hours a week for Defendants, could not keep up with the package volume, he would lose his job and possibly suffer other adverse financial consequences. Plaintiff Cardenas-Riumallo believed this because he had been told by another driver that Defendants Daniel and Dorel Singeorzan had threatened to withhold pay and make that driver pay for delivering packages he could not deliver.

45. Plaintiff Cardenas-Riumallo was not engaged in the package delivery business prior to going to work for Defendants, and any and all agreements he signed, and actions he took relating to establishing himself as an independent contractor engaged in the package delivery business, including signing and submitting the SCI Owner/Operator Agreement, were taken at the behest and direction of all three Defendants, as required conditions of employment.

46. Plaintiff Cardenas-Riumallo was offered the same employment terms as Plaintiff Cardenas Mansilla. Plaintiff Cardenas-Riumallo agreed to a promised rate of pay of $5 per delivery stop.

47.     Plaintiff Cardenas-Riumallo alleges that Defendants Daniel and Dorel Singeorzan knew that Plaintiff Cardenas-Riumallo was not an independent contractor engaged in the package delivery business when they hired him, and that he was not registered as such a business with the state of Oregon, and that he did not qualify as an independent contractor under the terms of the SCI Owner/Operator Agreement they required him to submit as a condition of employment.

48.     Plaintiff Cardenas-Riumallo worked for over a week delivering packages for Defendants before he completed and submitted the SCI paperwork.

49.     As a condition of their employment delivering packages for Ontrac, Plaintiffs were required to rent handheld scanners from Ontrac in order to perform their duties. The rental fee was deducted weekly from their pay. The scanner was integral to the job and was owned and controlled exclusively by Defendant Ontrac. In 2016, Plaintiff Cardenas Mansilla paid $715 in scanner rental fees, and Plaintiff Cardenas-Riumallo paid $220 in scanner rental fees to Defendant Ontrac.

50.     Plaintiffs were required to pay fees to SCI in order to be paid for the work performed for the benefit of Defendants.

51.     Plaintiffs were required by Defendants to drive their personal vehicles to deliver packages for Defendants.  Plaintiffs had to purchase the insurance coverage required by Defendants, and were not reimbursed for gas, mileage, or wear and tear on their vehicles.

52.     At all times material, Plaintiffs were delivering packages exclusively for the Defendants and for no one else, and the income from delivering packages for Ontrac was the primary source of income for both Plaintiffs.

53.     At all times material, neither Plaintiff ever advertised their availability as a package delivery business.

10 – Complaint

54.     At all times material, Plaintiffs never maintained separate offices or places of business, and the only package delivery work performed by them was delivering packages for Ontrac out of the Springfield, Oregon warehouse controlled by Defendants Dorel and Daniel Singeorzan.

55.     At all times material, the compensation paid to Plaintiffs delivering packages for Defendant Ontrac and Defendants Dorel and Daniel Singeorzan was paid by SCI by direct deposit into Plaintiffs' individual bank accounts.

56.     At all times material, the deposits made to Plaintiffs' bank accounts by SCI for delivering packages for Defendants were not accompanied by any itemized statement of account relating to how the amount of pay was computed.

57.     At all material times, Defendants Ontrac set the terms and conditions of Plaintiffs' employment and Ontrac significantly controlled the manner in which the work was performed.

58.     At all times material, because Plaintiffs were wrongly classified as independent contractors, their earnings were not subject to employee wage withholding for federal and state taxes, and social security, and their joint employers did not make the employer contributions that would have been required if Plaintiffs' earnings had been properly classified as wages.

59.     At all times material to their individual claims, on the days they worked, Plaintiffs would report to Defendants Dorel or Daniel Singeorzan at the Springfield, Oregon warehouse where they sorted packages and identified and scanned the packages that were to be delivered within the geographic routes assigned to them by Defendants.

60.     At all times material to their individual claims, after sorting the packages and scanning them into their Ontrac scanners, Plaintiffs were each required to call an Ontrac office in Vancouver, Washington for clearance to proceed with their deliveries. If any packages were missing from Plaintiffs' scanners, Ontrac directed them to locate the package(s), scan them in

and to call back. Only when the scanner was loaded to Ontrac's satisfaction would Plaintiffs be cleared by Ontrac to proceed with the Ontrac deliveries.

61.     At all times material to their individual claims, after receiving clearance from Ontrac to begin making deliveries, Plaintiffs would then wait for an additional period of time while a warehouse employee of Defendants Dorel and Daniel Singeorzan printed out a route sheet for Plaintiffs that directed Plaintiffs as to the order in which the packages were to be delivered. The route sheets included a route map. The information required for the warehouse employee to generate the route sheets was electronically transmitted from Ontrac to Defendants Dorel and Daniel Singeorzan's warehouse employee, who then printed it out for Plaintiffs.

62.     At all times material to their individual claims, it was not unusual for Plaintiffs to spend 2 to 3 hours per day in the morning at the warehouse sorting, scanning, and awaiting clearance, before being cleared by Ontrac to begin their delivery routes.

63.     At all times material to their individual claims, upon completion of their delivery routes, Plaintiffs were required to "clear" their routes with Ontrac. Plaintiffs were required to call an Ontrac office in Arizona and wait while Ontrac confirmed that their scanners reflected that all of the packages assigned to them had been delivered. If there were discrepancies, Plaintiffs were required to address them before the route would be "cleared". Plaintiffs were told by all three Defendants they would not be paid for any deliveries if they did not clear their route daily with Ontrac.

64.     At all times material to their individual claims, Plaintiffs routinely waited for sometimes up to an hour for their route to be cleared by Ontrac. Often times they could not get through to Ontrac right away because the line would be busy or they were put on hold for extended periods.

65.     At all times material, Plaintiff Cardenas Mansilla routinely worked five days a week and routinely worked over 40 hours in a seven-day period. It was not unusual for Plaintiff Cardenas Mansilla to spend upwards of 60 hours in a seven-day period performing the duties required of him by Defendants.

66.     For example, during the seven-day workweek that included the period June 6 - 10, 2016 Plaintiff Cardenas Mansilla worked 5 days and a total of not less than 56 hours. During the seven-day workweek that included the period June 13 – 17, 2016, Plaintiff Cardenas Mansilla worked 5 days and a total of not less than 58 hours.

67.     At all times material, Plaintiff Cardenas-Riumallo routinely worked 5 days a week and routinely worked over 40 hours in a seven-day period. It was not unusual for Plaintiff Cardenas-Riumallo to spend upwards of 55 hours in a seven-day period performing the duties required of him by Defendants.

68.     For example, during the seven-day workweek that included the period June 6 - 10, 2016 Plaintiff Cardenas-Riumallo worked 5 days and a total of not less than 60 hours. During the seven-day workweek that included the period June 13 – 17, 2016, Plaintiff Cardenas-Riumallo worked 5 days and a total of not less than 63 hours.

69.     Sometime in mid-July 2016, Plaintiffs noticed that they were being asked to sort, scan, and deliver an increasing number of packages over a wider geographical area. Plaintiffs also noticed that even though the volume of packages they were sorting, scanning and delivering had increased, their pay did not reflect the higher package volume. Since neither of the Plaintiffs was routinely provided with an itemization of the amounts paid to them, they attempted on their own to reconcile their pay. Plaintiffs determined they were not receiving the agreed upon rate of $5

per delivery stop. Plaintiff Cardenas-Riumallo's questioned whether Plaintiffs were even receiving the minimum wage for the work they were doing for Defendants.

70.     On the morning of July 27, 2016, Plaintiff Cardenas-Riumallo with Plaintiff Cardenas Mansilla at his side, asked Defendant Daniel Singeorzan to clarify the rate of pay Plaintiffs were receiving. Daniel Singeorzan told Plaintiffs that they were being paid $1.50 for each delivery stop, not the $5 per delivery stop they had been promised.

71.     In response, Plaintiff Cardenas-Riumallo complained about the change of rate and asked when the rate of pay had been changed. Defendant Daniel Singeorzan refused to discuss the matter further and told the Plaintiffs they could meet the next day to discuss the issue.

72.     A short time later that same day, Plaintiffs again approached Defendant Daniel Singeorzan to ask him once more to clarify how long they had been working for the reduced rate of $1.50 per delivery stop. Plaintiffs complained about the change in their rate of pay that had been imposed without notice to Plaintiffs.

73.     Both Plaintiffs were calm and matter-of-fact while seeking clarification about their rate of pay, and while complaining about the unannounced reduction in their rate of pay.

74.     In response to Plaintiffs' request for further clarification about their rates of pay, and their complaint about the reduction in pay, Defendant Daniel Singeorzan told both Plaintiffs that they were "fired", and he directed them to empty their cars of all packages, return their scanners, and leave the warehouse and not return.

75.     During the time that Plaintiffs were delivering packages for Defendants, they were not paid the correct amount of minimum wage and overtime because they were incorrectly classified as independent contractors and not employees, and the piece rate they received was insufficient.

14 – Complaint

76.     At all material times, Defendants jointly and severally maintained a level of control over Plaintiffs equivalent to that of an employer, including control over Plaintiffs' sorting and delivering of packages on a pre-determined route based on a delivery route sheet provided each day to Plaintiffs by Defendants.

77.     Plaintiffs were required to bear many of the expenses of their employment, including expenses for their vehicle maintenance, gas, the Ontrac scanner rental, SCI expenses, and other expenses. At times, these expenses caused Plaintiffs' pay to fall below the FLSA required minimum wage, which in this case is the Oregon minimum wage.

78.     The FLSA requires employers to reimburse employees for such expenses which are for the benefit of the employer, when failing to do so would cause the wages paid to drop below the minimum wage required to be paid pursuant to the FLSA.

79.     At all material times, Defendants required Plaintiffs to use and maintain insured and licensed vehicles as a condition of doing their work delivering packages for Defendants. Plaintiffs were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, and routine maintenance. Plaintiffs were also required to use their personal cell phones to obtain clearance from Defendant Ontrac to begin deliveries, and to clear their route with Ontrac when they were finished. Defendants also required Defendants to answer their personal cell phones whenever Defendants called Plaintiffs.

80.     Defendants jointly and severally owe Plaintiffs unpaid minimum wages, overtime wages, liquidated damages, and penalty wages under the FLSA and Oregon Wage and Hour laws.

81.     At all material times, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

82.     Plaintiffs have each retained the law firm of Leiman & Johnson, LLC to represent them individually, and have incurred attorneys' fees and costs in bringing this action.  Pursuant to 29 U.S.C. § 216(b) and ORS 652.200, Plaintiffs are entitled to recovery of reasonable attorneys' fees and costs.

## FIRST CLAIM FOR RELIEF
### (FLSA Minimum Wage and Overtime Violations - 29 U.S.C § 207)

83.     Plaintiffs re-allege and incorporate herein by reference, all allegations contained in paragraphs 1 through 82 above.

84.     At all material times, Plaintiffs performed duties for the benefit of, and on behalf of all of the Defendants, under employment terms and conditions set by Defendants.

85.     At all material times, Defendants, as joint employers, were jointly and severally required to pay Plaintiffs in accordance with the minimum wage and overtime provisions of the FLSA.

86.     At all material times, Defendants did not keep the required records of hours worked by Plaintiffs.

87.     At all material times, Defendants did not compute a regular rate of pay for Plaintiffs by adding together their total piece work earnings for a workweek, and dividing that sum by the total hours worked as required by 29 C.F.R. §778.111.

88.     At all material times, Defendants did not account for the Ontrac scanner rental or the gas and vehicle related expenses incurred by Plaintiffs when computing their rates of pay.

89.     Defendants' failure to compute a regular rate of pay for Plaintiffs resulted in workweeks in which Plaintiffs did not receive the required minimum wages and overtime pay.

90.     Defendants have not paid Plaintiffs the FLSA required Oregon minimum wage for all hours worked.

16 – Complaint

91.     Defendants have not paid Plaintiffs the correct amount of overtime pay at a rate equal to one and one-half of their regular rate of pay for workweeks in which they worked in excess of 40 hours in violation of 29 U.S.C. § 207.

92.     At all material times hereto, Defendant failed to comply with Title 29 U.S.C. §§ 201-209 in that the Plaintiffs performed services and labor for Defendants for which Defendants failed to track hours worked, failed to compute a regular rate of pay, and failed to pay Plaintiffs the correct amount of minimum wages and overtime. Plaintiffs are entitled to liquidated damages for Defendants' willful failure to pay the correct amount of minimum wages and overtime.

93.     Plaintiffs bring this action individually, seeking unpaid minimum wages, overtime compensation, liquidated damages, pre-judgment interest, costs, penalty wages, and attorneys' fees arising from the law violations set forth herein.

94.     Defendants' failure to pay the Plaintiffs all minimum wages and overtime earned resulted from the Defendants' willful act of knowingly employing Plaintiffs as independent contractors when in fact Plaintiffs were employees subject to the minimum wage and overtime protections of the FLSA.

95.     By reason of said intentional, willful, and unlawful acts of Defendants, Plaintiffs have suffered damages and have also incurred costs and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (FLSA Retaliation)

96.     Plaintiffs re-allege and incorporate herein by reference, all allegations contained in paragraphs 1 through 82 above.

97.     On July 27, 2016 when Plaintiffs asked Defendant Daniel Singeorzan to clarify the rate of pay they were receiving, Plaintiffs also complained to Defendant Daniel Singeorzan that the rate of $1.50 was not the agreed upon rate of pay.

98. Plaintiffs "filed a complaint" within the meaning of 29 U.S.C. § 215(a)(3) when they told Defendant Daniel Singeorzan that Defendants were not paying Plaintiffs the agreed upon rate. Plaintiffs again "filed a complaint" on behalf of themselves within the meaning of 29 U.S.C. § 215(a)(3) when for a second time they asked Defendant Daniel Singeorzan to clarify how long the reduced rate of pay had been in effect, and complained that it was not the agreed upon rate.

99. Defendants Ontrac and Dorel Singeorzan are jointly and severally liable to both Plaintiffs together with Defendant Daniel Singeorzan as joint employers under the FLSA and Oregon Wage and Hour Laws.

100. Defendants violated 29 U.S.C. § 215(a)(3) by discharging Plaintiffs on or about July 27, 2016 because they made complaints to Defendant Daniel Singeorzan about how much they were getting paid.

101. Because Plaintiffs were incorrectly classified as independent contractors when in fact they were employees of the Defendants who were acting as joint employers, the pay that was the subject of Plaintiffs' complaints was FLSA minimum wage and overtime pay.

102. Plaintiffs are each entitled to reinstatement or front pay, and backpay for Defendants' wrongful termination of them in violation of 29 U.S.C. § 215 as alleged above, pursuant to 29 U.S.C. § 216(b).

103. Moreover, as a result of Defendants' actions described herein, Plaintiffs have each suffered emotional distress, humiliation, and loss of future earning capacity. These damages are continuing. Plaintiffs are entitled to recover payment for these compensatory damages under 29 U.S.C. § 216(b) in an amount to be determined by the jury.

104. Defendants acted with malice and reckless indifference to Plaintiffs' federally protected rights when on or about July 27, 2016 Defendants fired both Plaintiffs for questioning and

complaining about their rate of pay. Plaintiffs are therefore each entitled to receive punitive damages under 29 U.S.C. § 216(b) for that violation in an amount to be determined by the jury.

105.     Plaintiffs are entitled to recovery of reasonable attorney's fees and costs incurred in the prosecution of this action pursuant to 29 U.S.C. § 216(b). Plaintiffs are also entitled to their prejudgment and post-judgment interest on all awards.

### THIRD CLAIM FOR RELIEF
### (Oregon Wage and Hour Law Violations)

106.     Plaintiffs re-allege and incorporate herein by reference, all allegations contained in paragraphs 1 through 82 above.

107.     Defendants violated ORS 652.610 when they failed to provide Plaintiffs with itemized statements of pay.

108.     Defendants violated ORS 652.610 when they caused unlawful deductions to be taken from Plaintiffs' pay for the Ontrac scanner rental.

109.     Defendants violated ORS 653.025 when they did not reimburse Plaintiffs for vehicle maintenance, insurance, gas, and other expenses in workweeks in which after accounting for these expenses Plaintiffs did not earn the required minimum wage.

110.     Defendants violated ORS 652.150 when they failed to pay Plaintiffs all wages do on termination of employment.

111.     As a result of Defendants' failure to pay Plaintiffs wages, Plaintiffs were deprived of employer contributions to their individual social security accounts.

112.     Plaintiffs have each been damaged by Defendants' violation of Oregon Wage and Hour Laws and are entitled to their actual damages, penalty wages pursuant to ORS 652.150, plus pre-judgment interest, in amounts to be determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiffs respectfully ask the Court to grant the following relief:

1. On the First Claim for Relief, award Plaintiffs their actual damages for unpaid minimum wages and overtime in an amount to be determined at trial, plus an equal amount as liquidated damages for failure to pay minimum wages and overtime pursuant to the FLSA;

2. On the Second Claim for Relief, award Plaintiffs reinstatement, or front pay, backpay, compensatory, and punitive damages, in amounts to be determined by the jury.

3. On the Third Claim for Relief, award Plaintiffs their actual damages for violations of Oregon Wage and Hour Laws, plus penalty wages calculated according to ORS 652.150, in amounts to be determined by the jury.

4. Award Plaintiffs their reasonable attorney fees and costs;

5. Award Plaintiffs their pre-judgment and post-judgment interest; and

6. Award Plaintiffs any and all such other legal and equitable relief as this Court deems just and proper.

/////

/////

/////

DATED February 9, 2017.

Respectfully submitted,

/s Alan J. Leiman
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.: 98074
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiffs

/s Drew G. Johnson
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.: 114289
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiffs